*711 BEA, Circuit Judge,
dissenting.
I respectfully dissent. The IJ did not err when he admitted Feng’s first asylum application into evidence because it contained sufficient indicia of reliability to allow a trier of fact to conclude the information in that asylum application came from Feng: accurate biological, family, education, and work history information.[1] Because Feng’s answers in her first application were inconsistent with answers in her second application and with her asylum hearing testimony, there is substantial evidence in the record from which the IJ could have concluded Feng was not credible. Therefore, I would deny Feng’s petition for review.
United States immigration authorities apprehended Feng, a native and citizen of China, when she attempted to enter Puer-to Rico. Feng’s family hired an attorney they knew had a Mandarin-speaking assistant to prepare Feng’s asylum application, and told Feng that her attorney had a Mandarin-speaking assistant. Feng spoke with the assistant twice by telephone for fifteen minutes each time, and Feng asked the assistant to prepare an asylum application for her. The attorney prepared Feng’s asylum application and sent it to her. The application was written in English. There is no evidence in the record that Feng can read English, and no one translated the application for her. Nevertheless, she signed the signature page of the application. The attorney attempted to file the application, but it was rejected because Feng had not yet been served with a Notice to Appear. Later, Feng hired a new attorney who filed a second asylum application.
The primary basis for the IJ’s adverse credibility finding was that there were inconsistencies between Feng’s first asylum application and her asylum hearing testimony, as well as between Feng’s first and second asylum applications. These inconsistencies are clear and undisputed. For example, Feng stated in her first asylum application that government officials came into her home and kicked her down the stairs, which caused the death of her fetus. However, Feng testified that a doctor discovered she was pregnant during a regular checkup and performed an abortion over her objection.
This court must affirm an IJ’s credibility determination if it is supported by substantial evidence. Malkandi v. Holder, 576 F.3d 906, 908 (9th Cir.2009). Evidence that lacks sufficient indicia of reliability and accuracy does not constitute substantial evidence. See Singh v. INS, 292 F.3d 1017 (9th Cir.2002). The majority holds the first application was not sufficiently reliable and cannot constitute substantial evidence because Feng speaks Cantonese *712 whereas the attorney’s assistant who interviewed Feng to prepare Feng’s first application spoke Mandarin.
In Singh, the IJ found Singh not credible based on inconsistencies between Singh’s statements during an airport interview with an INS officer and his testimony before the IJ. Id. at 1019. The translator who participated in the airport interview spoke Hindi, a language Singh, a native Punjabi speaker, understood only “a little.” Id. at 1020. The government contended that “the accuracy of Singh’s answers to some of the questions during the interview demonstrate[d] that translation was not a problem.” Id. at 1022. However, this court explained that those questions “were simple in nature, involving such items as his name, place and date of birth.” Id. The inconsistent answers were given in response to questions that presented greater translation difficulty, for example, “a legal term of art such as ‘persecution.’ ” Id. Therefore, this court held that the airport interview transcript “lacked sufficient indicia of reliability and accuracy on its own to constitute substantial evidence supporting an adverse credibility determination.” Id. at 1022.
The instant case is distinguishable from Singh. Feng had multiple opportunities during her asylum hearing to explain the inconsistencies between her first application and both her second application and her testimony. But at no point did she state that she did not understand Mandarin or that she had difficulty communicating with the attorney’s assistant. In fact, Feng testified that her relatives hired an attorney they knew had a Mandarin-speaking assistant. Singh, on the other hand, was forced to rely on the government-provided translator who spoke a language Singh spoke only “a little.” Id.
Additionally, two factors this court relied upon to support its holding in Singh are not relevant in this case. First, the court in Singh explained that the questions asked during an airport interview are not designed to elicit as detailed a response as an asylum application. Therefore, the alien may later, in response to more detailed questions, reveal details that appear inconsistent with an airport interview. Id. at 1023. Second, the court in Singh explained that arriving aliens, particularly those who have been abused during interrogations by their government, may be reluctant to share information with government officials upon their arrival to the United States. Id. at 1024. Here, however, Feng’s inconsistent statements were not the product of an airport interview; rather, they were her responses to the questions in an asylum application. Further, Feng was not being interrogated by a government official — she was talking with the assistant of an attorney hired by her family.
Absent evidence of translation difficulties between Feng and the attorney’s assistant, the IJ could have reasonably concluded, based on the accuracy of the responses in the first application, that Feng provided the information in the first application. The first application contained accurate responses to numerous questions, including her: first, middle, and last name; sex; marital status; date, city, and country of birth; nationality; date of entry into the U.S.; most recent address in China; husband’s name and date of birth; son’s name and date of birth; educational history, including the name and type of school; and parents’ names and places of birth. On this basis, the IJ could have reasonably concluded the rest of the statements in the first application were also made by Feng.
Based on the inconsistencies between Feng’s first application and both her second application and her testimony before the IJ, substantial evidence supports the *713 IJ’s finding that Feng was not credible. Therefore, I respectfully dissent.

. Where would such accurate and personal information come from but from Feng? Sure, it is only circumstantial evidence Feng produced the information for the application, but as Henry David Thoreau said, “Some circumstantial evidence is very strong, as when you find a trout in the milk.” Henry David Thoreau, Journal, Nov. 11, 1850, 2 Journal of Henry D. Thoreau 94 (Bradford Torrey & Francis H. Allen eds.1962). The amount of accurate personal information in Feng's first application is strong circumstantial evidence Feng produced it, especially in view the record does not establish any other source for the information transmitted by the retained attorney’s assistant. Remember, there was no evidence another Feng family member was supplying the information in a loud stage whisper.
The majority dedicates a substantial portion of its analysis to evidence that Feng did not understand the language used to prepare the application and didn’t know what she was signing. Not a word though as to how detailed personal information could have snuck into the application but for Feng. Nor is there any explanation why the application got the “kicked-down-the-stairs-by-a-government-official” story wrong but got her school's name and her son’s birth date right.